v.

**STATE of Arkansas, Appellee.**

**No. CR–14–119.**

Court of Appeals of Arkansas.

June 18, 2014.

Terry Goodwin Jones, for appellant.

Dustin McDaniel, Att'y Gen., by: Rachel H. Kemp, Ass't Att'y Gen., and Lindsay Bridges, Law Student Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission to the Bar of the Supreme Court under the supervision of Darnisa Evans Johnson, Deputy Att'y Gen., for appellee.

WAYMOND M. BROWN, Judge.

Appellant appeals from the circuit court's order revoking his probation and committing him to the Division of Youth Services (DYS) for an undetermined period of time. On appeal, appellant's sole argument is that the circuit court erred in committing him to DYS's custody because the reasons for the violation of probation were due to the extenuating circumstances created by those who had been assigned to assist him in his counseling. We affirm.

In an order entered on April 3, 2013, appellant, a juvenile, was adjudicated delinquent of sexual assault in the second degree and was placed on probation for twelve months. Among the terms and conditions of his probation was a condition that he and his family "cooperate with assessment and/or treatment services and follow all recommendations of Life Strate-

gies." On June 14, 2013, the State filed a petition to revoke appellant's probation on the ground that appellant had failed to get counseling with Life Strategies in violation of this condition of his probation.

During the November 20, 2013 revocation hearing, appellant's probation officer, Lewis Davis, testified that appellant had been non-compliant with the counseling requirement as he had missed all four group therapy sessions, attended two out of five individual counseling sessions, and attended three out of four family sessions. Davis stated that appellant told him that appellant's absences were due to "transportation issues[,]" but he advised that appellant's case manager offered to take appellant to and from his counseling appointments "occasionally." He was unaware of whether the case manager offered to provide transportation every time. Davis stated that he thought committing appellant to DYS was necessary because Davis thought appellant "would do better in an in-patient facility and the State [could] provide that."

Appellant's case manager, Terrell Jenkins, testified that appellant's attendance at meetings set up by Jenkins for appellant was "sporadic." Jenkins also testified that the only condition he was aware of that appellant was ordered to do, but which appellant refused to abide by, were "the terms with his therapist."

Appellant's therapist from Life Strategies, Anthony Pickering, testified that appellant attended "about half" of his sessions. Pickering testified that appellant was "resistant on and off through treatment[,]" showing signs of growth and then regressing, "becoming verbally abusive and just resistant." Pickering testified that "most" of the sessions appellant attended were at appellant's house, thereby making transportation a non-issue. His issue with appellant was that appellant would not be at home at the times appellant "knew" were set for sessions.[1] When Pickering discussed the issue with appellant "multiple times[,]" he told Pickering "counseling was stupid and he did not need it." He noted that appellant did take responsibility for his actions "at times" while "at other times he would say he did not do anything."

Appellant testified regarding the previous testimony on his noncompliance that "some of it is true but some of it is not true." Appellant testified that while Pickering used to come see him, Pickering was late and had not shown up in the past couple of months. He stated that Pickering was supposed to be at his home by 1:00 p.m. and that he would leave if Pickering had not arrived by 1:15 p.m. Appellant denied that he had missed a majority of the appointments, but admitted that he "probably did miss half of them since July." He said that Jenkins had helped him "a lot" and that he saw Jenkins "almost every day." He asserted that he had not seen Davis since he was put on probation and that the other witnesses were "lying on him." Finally, appellant asserted that he had phone numbers to reschedule appointments that he missed, but admitted only calling to reschedule a "couple of times[.]"

Following appellant's testimony, the court found that appellant was in violation of his probation and committed him to DYS for a period of time to be determined by appellant's cooperation. On November 21, 2013, the court entered a delinquency adjudication and DYS commitment order reflecting the same and ordering appellant

1. Sessions were set for 1:00 p.m. on Mondays and Wednesdays. Both appellant and his mother were aware of this schedule because they picked the days and times.

to sex offender specific treatment. This timely appeal followed.

 Under Arkansas Code Annotated section 9–27–339 (Supp.2011), a juvenile court may revoke a juvenile's probation if it finds by a preponderance of the evidence that the juvenile violated the terms and conditions of probation.[2] The State need only show that the appellant committed one violation in order to sustain a revocation.[3] On appeal, the juvenile court's findings will be upheld unless they are clearly against the preponderance of the evidence.[4] Because the determination of a preponderance of the evidence turns on questions of credibility and weight to be given testimony, appellate courts defer to the trial judge's superior position to gauge these matters.[5]

There was testimony from appellant's therapist, case manager, and probation officer that appellant was not complying with the counseling condition of his probation. Appellant admitted that he missed multiple counseling appointments in spite of his admission that he picked the days for the sessions, thereby corroborating Pickering's testimony that appellant knew when the sessions were. However, appellant asserts that his failure to comply is the fault of his therapist. While appellant offered an excuse for his violation, the trial judge was not required to believe him or excuse his failure to comply with the conditions of his probation.[6] All testimony, including appellant's, was that appellant was not complying with his counseling requirement; however, appellant admitted the same with qualification. Why he failed to comply stemmed from witness testimony that differed, and was therefore an issue of credibility. We defer to the fact-finder on issues of credibility.[7] We find that the trial court's findings are not clearly against the preponderance of the evidence.

Affirmed.

GLADWIN, C.J., and VAUGHT, J., agree.

---

2. *M.L. v. State*, 2013 Ark. App. 130, at 1, 2013 WL 765201 (citing *R.W. v. State*, 2010 Ark. App. 220, 2010 WL 724310).

3. *Id.*, at 2–3 (citing *Brock v. State*, 70 Ark.App. 107, 14 S.W.3d 908 (2000)).

4. *Id.*, at 3.

5. *Id.* (citing *Williams v. State*, 351 Ark. 229, 91 S.W.3d 68 (2002)).

6. *Ingram v. State*, 2009 Ark. App. 729, at 7, 363 S.W.3d 6, 10 (citing *Jones v. State*, 52 Ark.App. 179, 916 S.W.2d 766 (1996)).

7. *Id.* (citing *McChristian v. State*, 70 Ark.App. 514, 20 S.W.3d 461 (2000)).